Daniel Low (Bar #218387)
**KOTCHEN & LOW LLP**
1745 Kalorama Road NW, Suite 101
Washington, DC 20009
Telephone: (202) 471-1995
Fax: (202) 280-1128
Email: dlow@kotchen.com

*Attorney for Plaintiff and Putative Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| GREGORY HANDLOSER,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>HCL TECHNOLOGIES LTD. and HCL AMERICA, INC.,<br><br>　　　　　　Defendants. | Case No. 5:19-cv-1242<br><br>**COMPLAINT**<br><br>FOR EMPLOYMENT DISCRIMINATION<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

　　　　Plaintiff Gregory Handloser brings this action on behalf of himself and a class of similarly situated individuals to remedy pervasive, ongoing race discrimination by Defendants HCL Technologies Limited and HCL America, Inc. (collectively, "HCL"), and alleges as follows:

**NATURE OF THE ACTION**

　　　　1.　　HCL Technologies Limited is an Indian company that provides information technology and consulting services to customers worldwide. HCL employs almost 118,000 employees, approximately 12,000 of whom are located in the United States. While roughly 1-2% of the United States population, and about 12% of the relevant labor market, is South Asian,

1

1. approximately 70% (or more) of HCL's United States-based workforce is South Asian (primarily from India).[1] As discussed below, this grossly disproportionate workforce results from HCL's intentional pattern and practice of employment discrimination against individuals who are not South Asian, including discrimination in job placement (*i.e.*, hiring/staffing) decisions.

2. HCL's employment practices violate the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("§ 1981").[2] Plaintiff seeks, on his own behalf, and on behalf of a class of similarly situated individuals, declaratory, injunctive, and other equitable relief, compensatory and punitive damages, including pre- and post-judgment interest, attorneys' fees, and costs to redress HCL's pervasive pattern and practice of discrimination.

## PARTIES

3. Plaintiff Gregory Handloser was born in the United States and is Caucasian. He is a resident of Florida. Plaintiff is a member of a protected class, as recognized by § 1981.

4. Defendant HCL Technologies Limited is an Indian multinational company that provides technology services, products, and engineering, including business consulting and outsourcing services, to clients located worldwide. HCL Technologies Limited is headquartered in Noida, India and maintains its U.S. headquarters in Sunnyvale, California.

5. Defendant HCL America, Inc. is a wholly-owned subsidiary of HCL Technologies Limited and was incorporated in California in 1988. HCL America, Inc. has 25 offices within the United States and is also headquartered in Sunnyvale, California. HCL America, Inc. provides business services similar to HCL Technologies Limited, including consulting and information technology services.

---

[1] As used herein, "South Asian" refers to individuals who trace their ancestry to the Indian sub-continent. *See, e.g.*, *Fonseca v. Sysco Food Serv. of Az., Inc.*, 374 F.3d 840, 850 (9th Cir. 2004) ("Under 42 U.S.C. § 1981, discrimination based on ancestry or ethnic characteristics is prohibited" as discrimination based on race) (citation omitted).

[2] Plaintiff has also filed a charge of discrimination with the EEOC. Plaintiff intends to amend the complaint to add Title VII claims upon receipt of his notice of right to sue from the EEOC.

## JURISDICTION

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1981(a).

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) as this matter is a class action with an amount in controversy of greater than $5 million, exclusive of interest and costs, and involves at least one class member who is a citizen of a state and is brought against a foreign corporation.

8. This Court has personal jurisdiction over HCL because it engages in continuous and systematic business contacts within the State of California and maintains a substantial physical presence in this State, including the operation of offices in Sunnyvale, California (its U.S. headquarters), Irvine, California, and Lake Forest, California.

## VENUE AND INTRADISTRICT ASSIGNMENT

9. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because HCL resides in this District, conducts business in this District, engaged in discriminatory conduct in this District, and employment records relevant to HCL's discriminatory pattern and practice are maintained and administered in this District. Additionally, HCL engages in continuous and systematic business contacts within this District, and maintains a substantial physical presence in this District, including the operation of its United States headquarters in Sunnyvale, California.

10. Assignment in this Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events giving rise to this matter's claims occurred in this Division.

## STATEMENT OF FACTS

*Overview of HCL's Business Model*

11. HCL has 25 offices in the United States and employs approximately 12,000 employees domestically. HCL earned over $7.8 billion in revenue in the past fiscal year, and derives approximately 63% of its revenue from the United States (HCL's largest market).

12. HCL contracts with U.S. companies to provide IT-related services. Once HCL secures

a contract with a client, it hires individuals to fill positions to service the client. Individuals must apply and interview for these positions. Once a position servicing a client comes to an end (or if an employee is removed from a position), individuals are placed in an unallocated status, also known as being "benched." Once on the bench, individuals must again seek new positions within HCL, going through an application and interview process, just as external applicants must.

*Overview of HCL's Discriminatory Scheme*

13. HCL has engaged in a systematic, company-wide, pattern and practice of discrimination in favor of South Asians and against individuals who are not South Asian in hiring decisions. HCL's discriminatory preference for South Asians in hiring and staffing is effectuated in at least three ways.

14. First, HCL engages in a practice of securing H-1B and L-1 visas for South Asian workers located overseas who will then be used to staff U.S. positions. The federal government annually awards 65,000 H-1B visas (plus an additional 20,000 for individuals with advanced degrees). These visas are awarded on a lottery basis. Given the cap on H-1B visas, companies compete to secure visas for prospective visa workers. Each year, companies submit H-1B visa petitions at the beginning of April for visas to be awarded later that year. H-1B visa petitions must identify an actual job at a specific location that the prospective visa worker will fill if awarded a visa.

15. To fulfill its employment preference for South Asians, HCL seeks to maximize the number of visas it receives each year from the federal government. HCL submits visa petitions for more positions than actually exist in the U.S. in order to maximize its chances of securing the highest number of available H-1B visas from the lottery process. In this way, HCL has been able to secure visas for far more individuals than it actually has a present need for. For example, HCL is consistently one of the top-10 H-1B visa recipients in the U.S., and from 2015 to 2017, HCL received 10,432 new H-1B visas and 310 L-1 visas, far more positions than could actually exist given that HCL only employs approximately 12,000 individuals in the United States.

16. All, or substantially all, of the individuals for whom HCL secures visas are South Asian. While both individuals already located in the U.S. and foreign individuals who are visa-ready

are considered for open positions in the U.S., as a matter of corporate practice, "visa ready" individuals are given preference. HCL's explicit preference to staff visa holders in U.S. positions minimizes or eliminates competition for the jobs from non-South Asians residing in the U.S. (including both external applicants and existing employees seeking those positions).

17. Second, on information and belief, when conducting local hiring (*i.e.*, hiring of individuals who already reside within the U.S.) HCL gives preference to South Asian candidates. For instance, HCL's recruiters disproportionately seek out and recruit South Asian candidates. And HCL then gives South Asian candidates preference over comparably or better qualified non-South Asian candidates. HCL also gives preference to South Asian and Indian contract workers, to the exclusion of non-South Asian and non-Indian job applicants and existing employees.

18. Third, HCL terminates non-South Asians at disproportionately high rates compared to South Asians. HCL has a policy to terminate employees who are on the bench for more than four weeks. Because South Asians are given preference for new positions, and these individuals are used to displace non-South Asians on existing projects, non-South Asians are disproportionately relegated to the bench and unable to secure new positions within HCL. This, among other things, leads to their termination at disproportionate rates compared to South Asians.

19. HCL's U.S. workforce reflects the result of its discriminatory scheme. At least 70% (if not more) of HCL's United States-based workforce is South Asian (primarily from India), as is the vast majority of its managerial and supervisory-level staff. By contrast, during the 2010 census, all Asian subgroups combined made up 4.8% of the U.S. population. South Asians made up 1-2% of the U.S. population and about 12% of the U.S. IT industry.

*Plaintiff's Experiences*

20. Mr. Handloser is a highly skilled and experienced sales professional with considerable academic and work experience. He holds a B.A. from the University of Michigan, has worked in sales since 2003, and has substantial experience with the type of outsourcing services offered by HCL. As a result of his training experience, Mr. Handloser has a wide array of skills that include expertise in client acquisition, consulting, and sales team management.

21. Mr. Handloser was considered for employment with HCL five times between 2017 and 2018, but HCL failed to hire him each time because of the company's systematic and continuous discriminatory scheme.

22. <u>First</u>. On October 2, 2017, Mr. Handloser spoke with a former colleague, Sanjai Hayaran, who submitted Mr. Handloser's resume for a sales role with HCL.

23. <u>Second</u>. On October 5, 2017, Mr. Handloser spoke with a former colleague, Paul Vane Deventer, who submitted Mr. Handloser's resume to Reshmi Roy for a manufacturing industry sales role with HCL.  On October 9, Mr. Handloser had a phone interview with Reshmi Roy, who then arranged an additional interview for Mr. Handloser with Anand Venkatraman, Head of Sales for HCL Manufacturing. On October 18, Mr. Handloser had a phone interview with Anad Venkatraman. Mr. Handloser's interviews went well and he received positive feedback. However, HCL did not hire him for the manufacturing industry sales role.

24. <u>Third</u>. On October 19, 2017, Mr. Handloser spoke with former colleague Ralph Billington, Associate Vice President at HCL, about a sales position with HCL's UTC Aerospace Systems account, for which he was the hiring manager. During the interview, Ralph Billington explained that his team had nine sales people, seven of whom were Indian and South Asian. Subsequently, Ralph Billington informed Mr. Handloser that, although he was interested in hiring Mr. Handloser, superiors directed Billington to hire the Indian candidate for the position.

25. <u>Fourth</u>. On February 14, 2017, Mr. Handloser was again contacted by Billington, to inquire into whether Mr. Handloser was still looking for a position. He arranged a February 16 interview with Bhavani Ganesan, of HCL's Global Sales Hiring Team. Bhavani Ganesan expressed that the interview went well and wanted to arrange another interview with Siba Satapathy, HCL's Senior Vice President for Aerospace & Defense. On February 20, Mr. Handloser interviewed with Siba Satapathy. On February 21, Billington informed Mr. Handloser that Siba Satapathy had given excellent feedback on the interview. Later that day, Ralph Billington requested a meeting to introduce his delivery team in India to Mr. Handloser, indicating that HCL found him to be an excellent candidate. On February 22, Bhavani Ganesan arranged a call between Mr. Handloser and HCL's

Human Resources and requested references, which Mr. Handloser immediately provided. On March 20, Ganesan requested Mr. Handloser interview with Hirren Turakhia, HCL's Senior Vice President and Global Business Head of Industrial/B2B Sector and Industry 4.0, which occurred on March 21. The interview went well and Mr. Handloser received no negative feedback. On April 10, however, Ralph Billington informed Mr. Handloser that it was a "no go" and that HCL had instructed him to accept an Indian candidate. Subsequently, Mr. Handloser came to understand that he was not hired because HCL executives pushed for an Indian and South Asian candidate to be hired, as the executives prefer working with Indian and South Asian individuals for cultural reasons.

26. <u>Fifth</u>. On June 26, 2018, Cynthia Mathew, Recruitment Manager for Sales & Leadership Hiring at HCL, contacted Mr. Handloser. Mathew stated that she was impressed with Mr. Handloser's qualifications and requested a phone interview. On June 28, Mr. Handloser interviewed with Cynthia Mathew via telephone. The interview went well and Mathew relayed positive comments about Mr. Handloser's experience. That same day, Cynthia Mathews followed up with Mr. Handloser, stating "[i]t was great connecting with you. As discussed please do share with me your updated resume." Mr. Handloser responded immediately thanking her for the open and transparent discussion and providing an updated resume. Although Mr. Handloser was qualified for the position and the interview went very well, HCL did not hire him.

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this Class Action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), seeking injunctive, declaratory, equitable, and monetary relief for HCL's systematic pattern and practice of discrimination against non-South Asian individuals in the United States. This action is brought on behalf of the following class:

> All individuals who are not of South Asian race who applied for positions with (or within) HCL in the U.S. and were not hired.

28. Members of the class are so numerous and geographically dispersed across the United States that joinder is impracticable. While the exact number of class members is unknown to Plaintiff, it is believed to be in the thousands. Furthermore, class members are readily identifiable from information and records in HCL's possession.

29.     There are numerous questions of law and fact common to members of the class. Among the common questions of law or fact are: (a) whether HCL has intentionally discriminated against individuals who are not of South Asian race in making hiring decisions; (b) whether HCL has intentionally favored South Asians in hiring, and/or whether HCL has intentionally disfavored non-South Asians in hiring, promotion/demotion, and termination decisions; (c) whether HCL's policy and practice of relying on South Asian visa and local workers is intentionally discriminatory; (d) whether HCL has violated § 1981; (e) whether equitable and injunctive relief is warranted for the class and (f) whether compensatory and/or punitive damages are warranted for the class.

30.     Plaintiff's claims are typical of the class. Members of the class were damaged by the same discriminatory practices employed by HCL.

31.     Plaintiff will fairly and adequately protect the interest of other class members because he has no interest that is antagonistic to or which conflicts with those of any other class member, and Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in class litigation to represent him and the class.

32.     Plaintiff and the class he seeks to represent have suffered substantial losses in earnings and other employment benefits and compensation as a result of HCL's actions.

33.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because HCL has acted and/or refused to act on grounds generally applicable to the class, making declaratory and injunctive relief appropriate with respect to Plaintiff and the class as a whole. Members of the class are entitled to declaratory and injunctive relief to end HCL's systematic, common, uniform, unfair, and discriminatory policies and practices.

34.     Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) for determination of the damages claims of individual class members because the issue of liability is common to the class and the common nucleus of operative facts forms the central issue, which predominates over individual issues of proof. The primary question common to the class is whether HCL has discriminated on the basis of race in their employment practices. These questions are central to the case and predominates over individual issues among the members of the proposed class. HCL

has engaged in a common course of discriminatory conduct in a manner that has harmed all of the class members. Class certification under Rule 23(b)(3) would be superior to other methods for fair and efficient resolution of the issues because certification will avoid the need for repeated litigation by each individual class member. The instant case will be eminently manageable as a class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

35. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(c)(4) to litigate Plaintiff's claims for prospective classwide compliance and affirmative injunctive relief necessary to eliminate HCL's discrimination. Certification under this rule is also appropriate to decide whether HCL has adopted a systemic pattern and practice of racial discrimination in hiring decisions. Certification under this rule is also appropriate to determine classwide damages, including punitive damages.

**COUNT I**
**Disparate Treatment on the Basis of Race in Violation of 42 U.S.C. § 1981**
**(On behalf of Plaintiff and the Class)**

36. Plaintiff re-alleges each preceding paragraph as though fully set forth herein.

37. This claim is brought by Plaintiff on behalf of himself and the class.

38. Throughout the class liability period, HCL has engaged in a pattern and practice of discriminating against individuals who are not of South Asian race by: (a) knowingly and intentionally favoring individuals of South Asian race in job placement (*i.e.*, hiring/staffing) decisions, (b) knowingly and intentionally disfavoring individuals who are not of South Asian race (including Plaintiff) in job placement (*i.e.*, hiring/staffing) decisions, (c) knowingly and intentionally creating and maintaining an overwhelmingly disproportionate workforce in the United States consisting of approximately 70% or more South Asian employees (primarily from India).

39. As a direct and proximate result of HCL's intentional discrimination, Plaintiff and class members have been denied employment and positions within HCL.

40. HCL's actions constitute unlawful discrimination on the basis of race in violation of 42 U.S.C. § 1981.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the class pray for relief as follows:

a. Certification of the case as a class action pursuant to Fed. R. Civ. P. 23;

b. Designation of Plaintiff as representative of the class;

c. Designation of Plaintiff's counsel as counsel for the class;

d. A declaratory judgment that the practices complained of herein are unlawful and violate the Civil Rights Act of 1866, 42 U.S.C. § 1981;

e. A permanent injunction against Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in unlawful policies, practices, customs, and usages set forth herein;

f. Order Defendants to adopt a valid, non-discriminatory method for hiring, promotion, termination, and other employment decisions;

g. Order Defendants to post notices concerning its duty to refrain from discriminating against employees on the basis of race;

h. Award Plaintiff and the Class damages – including (without limitation) compensatory, exemplary, and punitive damages for the harm they suffered as a result of Defendant's violations of § 1981;

i. Award Plaintiff and the Class pre- and post-judgment interest at the prevailing rate on the compensatory damages as a result of Defendants' discriminating against them in violation of § 1981;

j. Award Plaintiff and the Class front- and back-pay, reinstatement, and such other equitable relief as the Court deems just and appropriate;

k. Award reasonable attorneys' fees, expert witness fees, expenses, and costs of this action and of prior administrative actions; and

l. Award Plaintiff and the Class such other relief as this Court deems just and appropriate.

## **JURY TRIAL DEMAND**

Pursuant to Fed. R. Civ. P. 38, Plaintiff and the Class respectfully demand a trial by jury on all issues properly triable by a jury in this action.

| | |
|---|---|
| DATED:   March 7, 2019 | Respectfully submitted, |
| | By: /s/Daniel Low<br>Daniel Low, SBN 218387<br>**KOTCHEN & LOW LLP**<br>1745 Kalorama Road NW, Suite 101<br>Washington, DC 20009<br>Telephone: (202) 471-1995<br>Email: dlow@kotchen.com |
| | *Attorney for Plaintiff Gregory Handloser and Putative Class* |