1  DOUGLAS J. FARMER, CA Bar No. 139646
   douglas.farmer@ogletree.com
2  BRIAN D. BERRY, CA Bar No. 229893
   brian.berry@ogletree.com
3  SARAH ZENEWICZ, CA Bar No. 258068
   sarah.zenewicz@ogletree.com
4  ROSHNI C. KAPOOR, CA Bar No. 310612
   roshni.kapoor@ogletree.com
5  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
6  Steuart Tower, Suite 1300
   One Market Plaza
7  San Francisco, CA  94105
   Telephone:    415-442-4810
8  Facsimile:    415-442-4870

9  CHRISTOPHER McCRACKEN, (*pro hac vice*)
   christopher.mccracken@ogletree.com
10 OGLETREE,  DEAKINS,  NASH,  SMOAK  &
   STEWART, P.C.
11 The KOIN Center
   222 SW Columbia Street, Suite 1500
12 Portland, OR 97201
   Telephone:    503-552-2140
13 Facsimile:    503-224-4518

14 Attorneys for Defendants
   HCL TECHNOLOGIES LTD. and HCL
15 AMERICA, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GREGORY HANDLOSER and CERAFIN CASTILLO,<br><br>                Plaintiffs,<br><br>      v.<br><br>HCL TECHNOLOGIES LTD. and HCL AMERICA, INC.,<br><br>                Defendants. | Case No. 5:19-cv-01242-LHK (VKD)<br><br>**DECLARATION OF SUNIL KHANNA IN SUPPORT OF DEFENDANTS' ADMINISTRATIVE MOTION TO SEAL DOCUMENTS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

# DECLARATION OF SUNIL KHANNA

I, Sunil Khanna, declare as follows:

1. I am currently employed by HCL America, Inc. ("HCLA") as an Associate Vice President in Human Resources ("HR"). I have personal knowledge of the facts contained in this declaration and if called upon to do so, I would testify competently to such facts under oath.

2. I began in this role in approximately July 2018. In my current role, I am responsible for North American HR operations, which includes United States, Canada, and Mexico. Previously, I led the global people practices of the Engineering and Research & Development Services line of business for approximately two years. Before that, I was the global benefits lead in the Center of Excellence. In total, I have been employed with HCLA or HCL Technologies Ltd. ("HCLT," together with HCLA and other HCLT subsidiaries, "HCL") in an HR-related capacity since approximately 1994. Based on my twenty-plus years in HCL's HR department, I am familiar with HCL's U.S. employment policies and practices for recruiting, hiring, staffing, and terminations.

3. I have reviewed the Exhibits to Plaintiffs' Motion for Class Certification. In connection with that motion, I understand Plaintiffs filed an Administrative Motion to File Under Seal to file under seal 38 Exhibits. HCL joins Plaintiffs' motion to file under seal Exhibits 3, 5, 6, 7, 9, 10, 11, 13-19, 21-25, 27-29, 31, 33, 35-39, 44, and 45 (the "Exhibits") to Plaintiffs' Motion for Class Certification.

4. HCL provides information technology ("IT") consulting services to a variety of clients across the nation (and abroad). As a consulting firm, HCL's business revenue model is based on offering its clients the services of highly-skilled IT talent. As a result, HCL's competitive standing in the industry is dependent on the success of HCL's recruiting and staffing practices and operations. HCL has devoted, and continues to devote, an extraordinary amount of time, money, and human resources toward developing and optimizing internal processes and operations for recruiting and staffing IT personnel.

5. Exhibits 3, 5, 21, 25, 28, 36, and 44 contain highly sensitive information regarding HCL's internal data and analyses regarding, for example, licensing fees, skillsets of different employee populations, approval rates of visa applications, and resource utilization percentages by

geography, as well as metrics comparing the availability of IT staff and client demands for specialized skillsets on a global scale. These documents also contain sensitive financial information about recruiting and staffing, such as budgets and wage-related expenses.

6. Exhibits 6, 13, and 14 are internal decks about HCL's Talent Supply Chain and Workforce Planning Cell ("WPC"), which is responsible for identifying and staffing potential internal candidates in open positions. These documents describe specifics about recruiting and staffing workflow, strategic initiatives for internal job fulfillment and cost optimizations, interview criteria, recruiting channels, utilizing systems to manage client demand, redeployment forecasts, and tenure and retention efforts.

7. Exhibits 7, 15, 16, 17, 18, 19, 22, 23, 24, 31, and 33 contain internal discussions between HCL employees about highly sensitive information regarding HCL's decision-making and business strategies on recruitment and client fulfillment efforts, including, for example, discussions on addressing certain staffing shortages, any travel issues related to fulfilling client requests at different geographic locations, and any specialized skillsets each client requires. These documents also contain HCL's clients' IT needs, which clients expect HCL to keep confidential.

8. Exhibit 9 is a summary of HCL's Capability, Development, and Execution ("CDEX") framework and Exhibit 10 is the CDEX framework. CDEX is a complete taxonomy of HCL jobs organized and grouped in multiple different ways, designed by HCL to strengthen its competencies and meet client demand. CDEX is also closely tied to HCL's revenue model.

9. Exhibit 11 is an excerpt of the transcript of my deposition, and Exhibit 35 is HCL's responses to Plaintiffs' Special Interrogatories No. 1 and 2. These documents contain information regarding HCL's processes for employee onboarding through termination, data and systems related to employee allocations and different HCL subsidiaries, and plans and efforts to implement affirmative action plans.

10. Exhibits 27 and 29 contain personal and private contact information, including but not limited to their names, personal email and phone number, date of birth, and the last four digits of their social security number, of applicants or employees who are not parties to this lawsuit.

11. Exhibits 37, 38, and 39 are, respectively, the August 4, 2020 Expert Report of David

1. Neumark, the September 16, 2020 Rebuttal Report of David Neumark, and the Expert Report of J. Michael Dumond (together, "Expert Reports"). These Expert Reports discuss findings derived from sensitive, confidential data from HCL's applicant tracking and other related systems, including HCL's hiring practices, the number of employees and employee attrition rate in the different career levels, the number of distinct clients, and the number of distinct projects.

12. Exhibit 45 is Plaintiffs' selected compilation of internal recruiting remarks regarding numerous HCL job requisitions. This document also reveals internal recruitment techniques, and specific technical skillsets to identify for each position. HCL does not publicly disclose the information these recruitment techniques.

13. HCL does not publicly disclose the data, analysis, strategy, financial, third-party, and client information contained in the Exhibits described above.

14. Based on my work experience at HCL, I know there is immense competition nationally for the IT talent that HCL's business model is based on. As I said above, I also know that HCL has devoted, and continues to devote, an extraordinary amount of time, money, and human resources toward developing its processes for recruiting and staffing IT staff.

15. The Exhibits identified above, especially when considered collectively, contain competitively sensitive information related to the manner and means by which HCL recruits and staffs IT personnel. Based on my work experience at HCL, I believe that HCL may suffer competitive injury if other companies, particularly IT consulting companies, were to gain access to the materials, especially if they gain access to these materials collectively. Other companies could use these materials to discern HCL's strategies, techniques, revenue model, and business processes for recruiting, staffing, and fulfilling client demands. Companies can use this information to gain a competitive advantage when competing for clients or even in other circumstances, such as when negotiating IT service contracts. Public disclosure of this information would diminish the value of HCL's business model and its recruiting and staffing operations which, as mentioned above, HCL has devoted and continues to devote substantial time, money, and resources to developing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: October 13, 2020

By: _____
    Sunil Khanna

44523003.2