United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GREGORY HANDLOSER and CERAFIN CASTILLO, individually and on behalf of others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HCL TECHNOLOGIES LTD. and HCL AMERICA, INC., <br><br> Defendants. | Case No. 19-CV-01242-LHK <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

Plaintiffs Gregory Handloser and Cerafin Castillo (collectively, "Plaintiffs") bring this putative class action against Defendants HCL Technologies Ltd. and HCL America, Inc. (collectively, "HCL") under Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866. Second Amended Complaint, ECF No. 40, at ¶ 2 ("SAC"). Before the Court is Plaintiffs' motion for class certification.[1] ECF No. 163 ("Mot"). Having considered the parties'

---

[1] Plaintiffs' motion for class certification contains a notice of motion paginated separately from the points and authorities in support of the motion. ECF No. 163, at v. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities must be contained in one document with the same pagination.

submissions, the relevant law, and the record in this case, the Court DENIES Plaintiffs' motion for class certification.

I.      **BACKGROUND**

   **A. Factual Background of HCL**

   HCL Technologies Ltd. is an Indian consulting and information technology company, with its headquarters in Noida, India and its United States headquarters in Sunnyvale, California.  SAC at ¶ 5.  HCL America, Inc. is a wholly-owned subsidiary of HCL Technologies Ltd. and is incorporated in California with its headquarters in Sunnyvale, California.  *Id.* at ¶ 6.  The companies operate in the United States to provide consulting and information technology services to clients.  *Id.*  HCL has 25 offices and approximately 20,000 employees and contractors in the United States.  *Id.* at ¶ 12; Opp. at 1.

   HCL contracts with companies based in the United States to supply information technology and consulting services on a project-based model.  *Id.* at ¶ 13.  This work can either be completed at HCL's India-based offices ("offshore"), or at a client's office or local HCL "delivery center" ("onsite").  Mot. at 2.  "Delivery" employees, who make up the bulk of HCL's workforce, perform direct information technology or consulting services for clients.  Opposition, ECF No. 171-3 at 1 ("Opp."); ECF No. 177-5, at ¶ 8 (Ex. A).  HCL also hires employees to perform corporate functions like finance and accounting ("enabling" employees) and sales employees.  *Id.* at 2; ECF No. 177-5, at ¶ 8.

   HCL organizes its "delivery" roles into different lines of business ("LOBs"), such as Engineering Research & Development or IT Infrastructure Management Services.  *Id.*  To fill new staffing needs with onsite clients, each LOB is served by a Workforce Placement Cell ("WPC") that coordinates hiring for new assignments.  *Id.*  When an HCL client has a new project, the relevant WPC generally attempts to assign an existing HCL employee who has the relevant skill set and experience for the assignment.  *Id.*  If an existing employee cannot be identified to fill the position, then the WPC releases the job request (also called a "demand") to HCL's U.S. Talent Acquisition Group ("TAG") to find a candidate.  Defendants assert that they have a preference for

Case No. 19-CV-01242-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

staffing onsite projects with "local" candidates, whether those candidates are existing employees or external job applicants.  Mot. at 3.  Plaintiffs allege that at this stage, Indian candidates with United States visas compete against external applicants from the United States.[2]  Mot. at 3.

Each job request is assigned a "job band" that corresponds to a "Career Level," with entry level positions falling into Career Levels 1 and 2, and more senior positions falling into Career Levels 3 and 4.  *Id.*  TAG seeks external candidates through various sources, including referrals, recruiters, direct applications from candidates, and third-party vendors.  ECF No. 177-5, at ¶ 21– 24.  For external delivery applicants the hiring process generally contains three stages.  First, a recruiter from the respective TAG identifies a viable applicant and "screens them through a brief interview."  ECF No. 177-6, at ¶ 5 (Sunil Khanna Decl.).  Second, members of the delivery team interview the applicant to assess technical skills and expertise.  Finally, the client often interviews the applicant and provides feedback to HCL on whether the client approves of the candidate.  *Id.*

The hiring process for sales and "enabling" corporate jobs is different because the work does not involve fix-term assignments for HCL clients, but rather internal work for HCL.  As such, WPCs and HCL's clients are not involved in the selection process for sales and "enabling" roles.  ECF No. 177-6, at ¶¶ 7–8 (Ex. B).  Sales positions instead generally require the applicant to interview with the Human Resources ("HR") department.  *Id.* at ¶ 7.  Enabling job applicants only go through an HR interview if the position they are being considered for is a "leadership position."  *Id.* at ¶ 8.

Plaintiffs allege that during the hiring process HCL screens local applicants through "culture fit interviews."  Mot. at 6, 15.  According to Plaintiffs, "culture fit" is no more than a pretext for screening out non-Indian local candidates.  *Id.* at 7.  Plaintiffs do not clarify whether they allege that candidates for all job types receive "culture fit interviews," but evidence suggests that HR sometimes conducts "culture fit" interviews for sales positions.  *See* ECF No. 161-16 (Ex. 13) ("HR discussion is done where the culture fit off [sic] the candidate into the organization . . .

---

[2] The parties use "Indian" to refer to both Indians and South-Asians.  *See* Mot. at 1; Opp. at 1. The Court therefore adopts this usage.

Case No. 19-CV-01242-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

United States District Court
Northern District of California

[is] discussed"); ECF No. 162-15, at 2 (Ex. 30) ("You do HR interview to see culture fit"); ECF No. 177-6, at ¶¶ 7–8 (Ex. B) (sales positions regularly involve an HR interview).  Plaintiffs do not present evidence that the HR interview for "enabling" leadership positions is used to screen for culture fit.

Plaintiffs further allege that HCL employs a uniform, companywide policy regarding how to prioritize candidates for open onsite positions.  This prioritization rule allegedly considers candidates in the following order:

Prioritization of profiles
- Best fit with visa from offshore
- Best fit with visa available at onsite
- Good fit + up-skilling/cross-skilling from offshore
- Flag for recruitment at onsite

ECF No. 161-17, at 12 (Ex. 14) (formatting in original).  Plaintiffs allege that this prioritization rule means that HCL gives first consideration for open positions to visa-ready Indian candidates, and only considers local United States candidates if no visa-ready Indian candidates are available. Mot. at 4.

As Plaintiffs acknowledge, a number of onsite positions that HCL seeks to fill explicitly exclude candidates on visas.  *Id.* at 5.  Some positions must be filled by United States citizens or green card holders by law, and other positions are restricted to United States citizens or green card holders because "regulatory pressures" limit the availability of work visas for those roles.  *Id.*

### 1.  Discriminatory Effect of HCL's Employment Practices

Plaintiffs submit a report by their expert, Dr. David Neumark, documenting the allegedly discriminatory effect of HCL's employment practices.  Mot. at 8; ECF No. 162-22 ("Neumark Report"); *see also* ECF No. 162-23 ("Neumark Rebuttal Report").  According to Plaintiffs' expert, of the approximately 43,000 people that HCL hired in the United States during the proposed class period, 45.68% were Indian, including 41.94% of full-time employees and 59.12% of contract employees.  Neumark Rebuttal Report at 3.  By contrast, only 9.61% of United States workers in similar occupations are Indian.  Neumark Report at ¶ 7(a).  Plaintiffs' expert estimates that the likelihood of these disparities occurring absent discrimination is 1 in 1 billion, which is between

United States District Court
Northern District of California

116 and 176 standard deviations. Neumark Rebuttal Report at 3. Furthermore, Plaintiffs' expert concludes that a state-by-state analysis demonstrates that this over-representation of Indian hires relative to the United States labor market is relatively uniform across the United States. *Id.* at ¶ 7.

Finally, Plaintiffs allege that these disparities exist even among workers hired into roles at HCL that are Career Level 3 and 4 only. During the class period, 58% of individuals hired into roles at Career Level 3 were Indian, and 61% of individuals hired into roles at Career Level 4 were Indian. Neumark Rebuttal Report App'x at 23–24. Excluding employees who came to the United States on work visas, 46% of individuals hired into roles at Career Level 3 were Indian and 41% of individuals hired into roles at Career Level 4 were Indian. *Id.*

## B. Procedural History

Plaintiffs filed a complaint in the instant action on March 7, 2019. ECF No. 1. On June 12, 2019, Plaintiffs filed a First Amended Complaint. ECF No. 21. On June 26, 2019, Defendants filed an answer. ECF No. 28. On October 22, 2019, Plaintiffs filed a Second Amended Complaint. ECF No. 40 ("SAC"). Plaintiffs' Second Amended Complaint alleges three claims: (1) disparate treatment on the basis of race and citizenship in violation of 42 U.S.C. § 1981; (2) disparate treatment on the basis of race and national origin in violation of 42 U.S.C. § 2000e, *et seq.*; and (3) disparate impact on the basis of race and national origin in violation of 42 U.S.C. § 2000e, *et seq. Id.* at ¶¶ 51–63. Plaintiffs sought to represent a class comprised of "All individuals who are not of South Asian race, or Indian national origin, or visa holders who applied for positions with (or within) HCL in the U.S. and were not hired." *Id.* at ¶ 42. On November 8, 2019, Defendants filed an answer to Plaintiffs' Second Amended Complaint. ECF No. 45.

On October 6, 2020, Plaintiffs filed the instant motion for class certification. ECF No. 163 ("Mot."). Plaintiffs have amended their proposed class definition and now seek to certify the following class under Federal Rule of Civil Procedure 23(b)(3) or 23(b)(2):

> All individuals who: (a) are United States citizens, not of South Asian race, and not of Indian national origin; (b) who sought a position; (c) with HCL Technologies Limited or HCL America, Inc.; (d) in the United States; (e) that would have been Career Level 3 or above; (f) between March 7, 2015 and the date of class certification; and (g) were not offered employment.

5

United States District Court
Northern District of California

Mot. at 10. In the alternative, Plaintiffs seek to certify a class pursuant to Rule 23(c)(4) for the purpose of resolving an unspecific number of common questions, include (1) whether HCL engaged in a pattern or practice of discrimination in hiring and staffing; (2) whether HCL's practices result in a disparate impact on the class; (3) whether punitive damages are appropriate; and (4) whether injunctive relief is appropriate. *Id.* at 22. Finally, Plaintiffs seek to have Plaintiffs' counsel, Kotchen & Low LLP, appointed as class counsel. *Id.* at 22. In connection with the motion for class certification, Plaintiffs filed an administrative motion to file under seal. ECF No. 161. On November 17, 2020, Defendants filed an opposition. In connection with that opposition, Defendants filed an administrative motion to file under seal. ECF No. 177. On December 11, 2020, Plaintiffs filed a reply. ECF No. 183. In connection with that reply, Plaintiffs filed an administrative motion to file under seal. ECF No. 184. On December 18, 2020, Defendants filed an administrative motion to file a sur-reply to Plaintiffs' reply. ECF No. 188. On December 22, 2020, Plaintiffs filed an opposition to Defendants' administrative motion. ECF No. 189.

## II.    LEGAL STANDARD

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23 does not set forth a mere pleading standard. To obtain class certification, Plaintiffs bear the burden of showing that they have affirmatively met each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a) provides that a district court may certify a class only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)-(4). That is, the class must satisfy the

Case No. 19-CV-01242-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

requirements of numerosity, commonality, typicality, and adequacy of representation to maintain a class action. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012).

If all four prerequisites of Rule 23(a) are satisfied, the Court must also find that Plaintiffs "satisfy through evidentiary proof" at least one of the three subsections of Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Rule 23(b) sets forth three general types of class actions. *See* Fed. R. Civ. P. 23(b)(1)–(b)(3). As relevant here, Plaintiffs seek certification under Rule 23(b)(3), 23(b)(2) or 23(c)(4). A class may be certified under 23(b)(3) if a court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). A class may be certified under 23(b)(2) if a court finds that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Finally, under Rule 23(c)(4), "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Dukes*, 564 U.S. at 351). This "rigorous" analysis applies to both Rule 23(a) and Rule 23(b). *Comcast*, 569 U.S. at 34. (discussing how Congress included "addition[al] . . . procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (e.g., an opportunity to opt out)," and how a court has a "duty to take a 'close look' at whether common questions predominate over individual ones"). When conducting this rigorous analysis, the Court may be required to "judg[e] the persuasiveness of the evidence presented." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).

Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determine whether the Rule 23

Case No. 19-CV-01242-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

prerequisites for class certification are satisfied." *Id.* If a court concludes that the moving party has met its burden of proof, then the court has broad discretion to certify the class. *Zinser*, 253 F.3d at 1186.

## III. DISCUSSION

Plaintiffs contend that they have met all threshold requirements for class certification under Rule 23(a), and therefore seek certification of a damages class under Rule 23(b)(3); an injunctive relief class under Rule 23(b)(2), or a common issues class under Rule 23(c)(4). Defendants argue that Plaintiffs' class certification motion fails on six independent grounds: (1) failure to establish commonality; (2) failure to establish typicality; (3) failure to establish adequacy; (4) predominance of individualized issues over common questions of the proposed class; (5) class action treatment is inferior to individual actions; and (6) failure to satisfy requirements for a Rule 23(b)(2) and 23(c)(4) class.

The Court addresses numerosity, commonality, typicality, and predominance below. Because Plaintiffs' failure to establish commonality, typicality, and predominance is sufficient to require denial of class certification, the Court need not reach Defendants' other grounds for denying class certification.

### A. Plaintiffs Have Established Numerosity under Rule 23(a)(1)

In order to establish numerosity under Federal Rule of Civil Procedure 23(a)(1), Plaintiffs must show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). When evaluating numerosity, the Court considers the specific facts of the case and the rule itself "imposes no absolute limitations." *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). However, "[a]s a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 522 (C.D. Cal. 2012).

Plaintiffs allege that the putative class would have roughly 43,000 members. Mot. at 11. Plaintiffs estimate this number by starting with the assertion that HCL hired 16,000 individuals

United States District Court
Northern District of California

into jobs above Career Level 3 during the class period.  *Id*; Neumark Rebuttal Report at 36, ECF No. 162-23 (Ex. 38).  Based on an internal HCL document, Plaintiffs allege that HCL has roughly four candidates for every position.  That would suggest that HCL rejected 48,000 candidates during the class period.  Based on the composition of the U.S. labor market, 90% of those applicants would be non-Indian.  That leaves an estimated class of 43,200 persons.  Defendants do not dispute that Plaintiffs' putative class is sufficiently numerous under Rule 23(a)(1).  The Court is therefore satisfied that Plaintiffs have established that their putative class is sufficiently numerous under Rule 23(a)(1).

### B.  Plaintiffs have Failed to Establish Commonality

Under Federal Rule of Civil Procedure 23(a)(2), a party seeking class certification must show that "there are questions of law or fact common to the class."  Fed R. Civ. P. 23(a)(2).  A common question is one that is "of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350 (emphasis added).  The mere existence of a common question does not satisfy Rule 23(a)(2)'s commonality requirement.  Rather, "[w]hat matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.* at 350 (citation omitted) (emphasis in original).

Furthermore, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury.  This does not mean merely that they have all suffered a violation of the same provision of law."  *Id.* (internal citations and quotation marks omitted).  Instead, plaintiffs' "claims must depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of *each one of the claims in one stroke*."  *Id.* (emphasis added).

In the context of an employment discrimination class action, plaintiffs seeking to litigate a class action involving a large number of individual employment decisions must establish "some glue holding the alleged reasons for all those decisions together" in order to satisfy the

9

commonality requirement of Rule 23(a)(2). *Id.* at 352. Without this "glue" linking the reasons for the individual hiring decision together, it is "impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" *Id.* (emphasis in original). This is because "[t]here is a 'wide gap' between an individual's claim that he was subject to a company's policy of discrimination, and the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact." *Moussouris v. Microsoft Corp.*, 2018 WL 3328418, at *23 (W.D. Wash. June 25, 2018) (citing *Dukes*, 564 U.S. at 352–53).

Plaintiffs argue that they have established commonality for the putative class for both their disparate treatment and disparate impact claims. Specifically, Plaintiffs allege that "two of HCL's nationwide U.S. employment practices provide [] 'glue' tying [Defendants' hiring] decisions together." Mot. at 14. Plaintiffs first allege that Defendants have a companywide policy of prioritizing visa-ready Indian candidates when filling open United States positions at HCL. Mot. at 14. Plaintiffs next allege that when hiring United States job applicants, Defendants have a companywide policy of screening out non-Indian local candidates through "culture fit" interviews. Mot. at 14. Finally, Plaintiffs argue that "gross statistical disparities evince the systematic discrimination at HCL." Mot. at 15. Plaintiffs argue that the existence of these policies and evidence of statistical disparities is sufficient to establish commonality for the putative class under Plaintiffs' disparate treatment and disparate impact claims. Mot. at 14–16. Defendants argue that this evidence is insufficient to establish commonality.[3] Opp. at 7.

---

[3] Defendants also argue that Plaintiffs lack standing to challenge Defendants' alleged visa-ready prioritization policy because the policy's harm would be limited to United States employees of HCL. Opp. at 12. However, the Court is not persuaded by this argument on the limited briefing and facts currently before it. Specifically, it is unclear whether HCL employees in India transferred to the United States on work visas constitute new hires. Defendants point to *Buchanan v. Tata Consultancy Serv.* to support their argument, but the court in *Buchanan* specifically stated that "the Court takes no position as to whether foreign workers transferred to the United States pursuant to work visa [sic] in fact constitute hires for the purposes of an employment discrimination analysis." 2017 WL 6611653, at *10 (N.D. Cal. Dec. 27, 2017). Likewise, the Court has insufficient facts before it to make that determination in the instant motion. Moreover,

The Court finds that Plaintiffs have not established commonality for at least seven reasons. First, for many members of the putative class, Defendants' challenged hiring practices could not have been the cause of the candidate's adverse employment decision.  Specifically, over 1,000 job requests during the proposed class period explicitly excluded visa holders from consideration. Opp. at 13; Mot. at 5; ECF No. 177-36, at 2–134 (Ex. AA).  Some of these positions excluded visa holders because the job was required by law to be filled with a citizen or green card holder.  *Id.* Other positions explicitly excluded visa holders because regulatory pressure discouraged companies from seeking to fill open positions with visa holders.  *Id.*  Plaintiffs acknowledge that many positions at HCL during the proposed class period explicitly excluded visa holders from consideration for these reasons.  Mot. at 5.  Candidates for these positions could not have been harmed by Defendants' alleged policy of prioritizing visa-ready candidates, and therefore establishing Defendants' liability at trial on the basis of that practice "cannot produce a common answer to the crucial question *why was I disfavored*."  *Dukes*, 564 U.S. at 352 (emphasis in original).

Second, for roughly 50% of job requests during the proposed class period HCL did not fill an open position with any candidate because either (1) the client withdrew the job request because it could not find a suitable candidate from HCL; (2) the client filled the job request with its own direct applicant; or (3) the position was filled by an HCL competitor.  Opp. at 20; ECF No. 177-29, at 10 n. 21 (Ex. T).  Establishing Defendants' liability at trial for the challenged hiring practices will therefore not resolve the claim of any candidate for a position that was filled by a HCL competitor; filled by a direct applicant to the client; or withdrawn by the client.  The adverse employment decision for these candidates is traceable to a client's decision and not Defendants' conduct.  Candidates for these positions therefore could not have been harmed by Defendants' conduct, and for any member of the putative class who applied for one of these positions, establishing Defendants' liability will not produce a "common answer to the crucial question *why*

---

because the Court denies Plaintiffs' motion for class certification, it is unnecessary to decide that question in the present motion.

Case No. 19-CV-01242-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

1    *was I disfavored.*"  *Dukes*, 564 U.S. at 352.

2          Third, the putative class also lacks commonality because there are reasons that job

3    candidates were not hired that are independent of Defendants' alleged discriminatory hiring

4    practices.  Specifically, for approximately two-thirds of job requests during the proposed class

5    period, HCL's clients conducted their own interviews during the hiring process and provided

6    feedback to HCL.  Moreover, in some instances HCL's client was empowered to reject any

7    candidate that the client did not find suitable after an interview.  *See* Opp. at 2; ECF No. 177-6, at

8    ¶ 5 (Ex. B); ECF No. 177-27, at ¶ 2 (Ex. R).  This means that for as many as two-thirds of job

9    requests, HCL's client will have reached their own, independent decision regarding an applicant

10   from HCL.  *See* Opp. at 23; ECF No. 177-29, at ¶ 23 (Ex. T); ECF No. 177-6, at ¶ 5 (Ex. B).  This

11   fact undermines Plaintiffs' argument that a class action could answer the common question for the

12   putative class "why was I disfavored," given that a myriad of individual clients will have exercised

13   their own discretion when interviewing potential candidates during Defendants' hiring process.

14   *See Dukes*, 564 U.S. at 352 (explaining that to establish commonality there must be "glue" holding

15   together the alleged reasons for each adverse employment decision); *Buchanan*, 2017 WL

16   6611653, *20 (plaintiffs' failure to address the fact that defendant's clients are involved in the

17   hiring process undermines claim of commonality of putative employment class).

18         Fourth, where plaintiffs challenge a companywide employment system that empowers

19   hiring managers to exercise discretion in making hiring decisions, plaintiffs must provide "some

20   glue holding the alleged reasons for all those decisions together."  *Id.* at 352.  Absent this "glue,"

21   it would be "quite unbelievable that all managers would exercise their discretion in a common way

22   without some common direction."  *Id.* at 356.  This is particularly true where there were a large

23   number of hiring decisions, in different physical locations, and for different positions.  *Id.* at 359–

24   360; *see also Moussouris*, 2018 WL 3328418, at *16 (explaining factors that make establishing

25   commonality difficult for a nationwide class).

26         Plaintiffs have failed to provide the requisite glue in this case.  Defendants' hiring process

27   takes a different form for job candidates depending on the position for which they applied.  For

28
                                                        12

United States District Court
Northern District of California

1  delivery positions, the general process for hiring external candidates takes the following form.

2  ECF No. 177-6, at ¶ 5 ("Khanna Decl.").  First, a recruiter from the relevant LOB gathers

3  applicants from various external sources and briefly interviews them.  Second, a member of the

4  delivery team conducts a technical interview.  Third, in many cases the client interviews the

5  candidate and provides feedback to HCL.  *Id.*  For sales and "enabling" positions, by contrast,

6  there is no client interview or client input because these roles serve only internal HCL functions.

7  Sales positions generally require the applicant to interview with the HR department, and Plaintiffs

8  have provided some evidence that HR interviews are used to screen candidates for "culture fit."

9  *See* ECF No. 161-16 (Ex. 13) ("HR discussion is done where the culture fit off [sic] the candidate

10  into the organization . . . [is] discussed"); ECF No. 184-9 (Ex. 48); ECF No. 162-15, at 2 (Ex. 30)

11  ("You do HR interview to see culture fit").[4]  Enabling job candidates, by contrast, only go through

12  an HR interview if the position for which they are being considered is a "leadership position."

13  ECF No. 177-6, at ¶ 8 (Ex. B).

14  Members of the putative class will therefore have undergone dramatically different hiring

15  procedures depending on which job they applied for, and only a small subset of the class will have

16  received an HR interview.  Furthermore, numerous members of the putative class will have been

17  rejected before ever being considered for an interview.  *Id.* at ¶ 8.  Thus, the putative class lacks a

18  common hiring experience that could tie their individual employment decisions together and

19  produce the requisite commonality.  *Dukes*, 564 U.S. at 352 (plaintiffs must provide sufficient

20  "glue" to tie each of the hiring decisions together).

21

22  _____

[4] Defendants filed an objection to the exhibits that Plaintiffs filed in support of their reply brief and Defendants seek permission to file a sur-reply to respond to these exhibits.  ECF No. 188.

23  Defendants argue that Plaintiffs' evidence is inappropriate because it has been submitted for the first time in reply.  Plaintiffs filed a response objecting to Defendants' motion to file a sur-reply.

24  ECF No. 189.  Plaintiffs argue that this evidence was presented in direct response to Defendants' arguments in Defendants' opposition brief.  *Id.* at 2. The Court DENIES Defendants' motion to

25  file a sur-reply.  First, the Court would reach the same outcome with or without the material to which Defendants object.  Second, even if the Court's decision did depend on the evidence—and

26  it does not—the Court would find that considering the evidence was appropriate in this situation because Plaintiffs raise it in direct response to issues raised in Defendants' opposition brief.  *See*

27  *Defs. of Wildlife v. U.S. Fish*, 2016 WL 4382604, at *10 (N.D. Cal. Aug. 17, 2016) (the court may consider reply evidence if it is "offered in direct response" to issues raised in opposition).

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Fifth, the putative class also lacks commonality because during the proposed class period, Defendants utilized roughly 1,800 different hiring managers across the country, each of whom was empowered with discretion to make staffing and hiring decisions.  Opp. at 1; ECF No. 177-28, at ¶¶ 39–40 ("Dumond Expert Report").  Plaintiffs provide no evidence that these hiring managers, or recruiters from the various LOBs, were given clear directives on who or how to hire.  Nor do Plaintiffs provide any evidence that delivery teams, who conduct technical interviews of potential hires, were closely monitored or directed during the delivery teams' evaluation of candidates.  As the United States Supreme Court explained in *Dukes*, "allowing discretion by local supervisors over employment matters . . . is just the opposite of a uniform employment practice that would provide the commonality needed for a class action."  *Dukes*, 564 U.S. at 355.

Sixth, Plaintiffs estimate that the putative class will include at least 43,000 individuals. Mot. at 11.  Moreover, employment decisions affecting the putative class took place in 47 states, involved roughly 16,000 job searches, and concerned approximately 200 job types.  *See* ECF No. 177-28, at ¶¶ 13, 23, 40 (Ex. S).  Defendants allege that the putative class could include as many as 532,000 members, although Plaintiffs dispute this estimate.  Opp. at 17; Reply at 7.  Even if the class were only 43,000 individuals, each of these class members represents an individual employment decision that necessarily involved different factual circumstances and decision-making by local hiring managers.  The United States Supreme Court in *Dukes* was concerned with just this issue, and "suggested (when not explicitly stating) that the sheer size of the [*Dukes*] class . . . was key to the commonality decision."  *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp 2d 113, 119 (S.D.N.Y. 2012) (citing *Dukes*, 564 U.S. at 350); *see also Buchanan*, 2017 WL 6611653, at *20 (finding that the sheer size of proposed class weighed heavily against finding of commonality).  Thus, where courts are faced with employment discrimination class actions that involve large proposed class sizes, substantial "glue" is required to "hold[] the alleged reasons for all of [the challenged] employment decisions together."  *Buchanan*, 2017 WL 6611653, at *20 (quoting *Chen-Oster*, 877 F. Supp. 2d at 119).  Plaintiffs have not met that burden here.

Finally, where plaintiffs challenge a companywide employment system that empowers

14

hiring managers with discretion to make hiring decisions, plaintiffs must identify "a common mode of exercising discretion that pervades the entire company." *Dukes*, 564 U.S. at 356. Plaintiffs have made essentially no effort to establish that Defendants' employment policies and procedures constrain discretion or follow a "common direction" from HCL's management. *See id.* (plaintiffs' failure to demonstrate restraints on discretion or "common direction" from management undermine allegation of common issues to the putative class). At most, Plaintiffs point to the fact that Defendants utilize a shared database for internal job requests ("Smart Recruit") and a standard process by which internal job requests are processed and filled. Mot. at 3. However, the fact that Defendants utilize a shared structure for considering job candidates and a shared database for logging such requests does not establish that Defendants use a centralized or standardized decision-making process with respect to employment decisions. *See Moussouris*, 2018 WL 3328418, at *24 (discussing criteria for establish commonality in employment class actions). Rather, Defendants' hiring process empowers a large number of recruiters, HR personnel, and delivery teams with significant discretion to make employment decisions. Courts "have generally denied certification when allegedly discriminatory policies are highly discretionary." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1229 (10th Cir. 2013); *Moussouris*, 2018 WL 3328418, at *15 (same). Plaintiffs have therefore failed to establish that "a common mode of exercising discretion [] pervades [Defendants'] entire company." *Dukes*, 564 U.S. at 356.

Accordingly, Plaintiffs have failed to establish commonality under Rule 23(a)(2).

### C. Plaintiffs have Failed to Establish Typicality

Under Rule 23(a)(3), plaintiffs must establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). The purpose of the typicality requirement is to insure that the interests of the named

15

1    representatives align with the interests of the class.  *See Ellis*, 657 F.3d at 984–85.

2           Plaintiff Gregory Handloser has worked in sales since 2003, and has experience with the

3    outsourcing services offered by HCL.[5]  Mot. at 9.  Handloser applied to work at HCL five times

4    between 2017 and 2018, but HCL did not hire him.  *Id.*  Plaintiff Cerafin Castillo is an engineering

5    professional who works as both a Cisco Certified Internetworking Expert and Ekahau Certified

6    Survey Expert (two qualifications within the field).  Mot. at 8.  Castillo has 35 years of

7    professional experience in the IT industry.  *Id.*  Castillo was considered for employment with HCL

8    on four occasions between 2018 and 2019, but HCL did not hire him.  *Id.*

9           Plaintiffs contend that Named Plaintiffs Handloser and Castillo "are experienced U.S.

10   workers who have been discriminated against by HCL's discriminatory practices against non-

11   Indians and their injuries are typical of all class members, who likewise, were not hired as a result

12   of HCL's discriminatory preferences for hiring Indian applicants."  Mot. at 17.

13          However, Handloser and Castillo's injuries are not typical of the putative class for several

14   reasons.  First, Castillo applied to four jobs at HCL, each of which served HCL's client the

15   University of California, San Francisco ("USCF").  Opp. at 4.  For at least one of these jobs,

16   UCSF explicitly excluded visa holders from consideration for the position.  ECF No. 177-27, at ¶

17   2 (Ex. R).  Similarly, Handloser applied for a job with HCL that explicitly excluded visa holders

18   from considerations.  ECF No. 177-23, at ¶ 2 (Ex. O).  Thus, Handloser and Castillo could not

19   have been harmed by Defendants' alleged practice of favoring visa-ready Indian candidates

20   because visa-ready Indian candidates were excluded from consideration for these positions.

21   Handloser and Castillo's injuries are therefore atypical of the putative class that Plaintiffs seek to

22   certify because typicality requires that "other class members [must] have been injured by the same

23   course of conduct" as the class representatives.  *Hanon*, 976 F.2d at 508.

24          Second, when Castillo applied for a different job with HCL, Castillo was interviewed by

25

26

27   ─────────────────────
     [5] In 2014, Handloser sued his former employer and HCL competitor, Infosys Technologies, Ltd,
     as a named plaintiff in an employment discrimination class action that made the same basic
     allegations that Plaintiffs allege in the instant case.  ECF No. 177-31, at 12–13 (Ex. V).

28

1    HCL's client UCSF, and UCSF rejected Castillo for the job.  ECF No. 177-27, at ¶ 5 (Ex. R).

2    Thus, it was UCSF's decision, and not Defendants' allegedly discriminatory employment

3    practices, which led to Castillo's adverse employment decision and injury.  Castillo therefore lacks

4    typicality of the class that Plaintiffs seek to certify, which is comprised of applicants to HCL that

5    were allegedly denied employment on account of Defendants' discriminatory hiring practices.

6    *Hanon*, 976 F.2d at 508 (class representative must have been injured by the same course of

7    conduct as other class members to satisfy typicality).

8            Moreover, after UCSF rejected Castillo, HCL did not fill the open position because UCSF

9    could not find a candidate that it approved of from HCL.  *Id.* at ¶ 6.  This further illustrates that

10   Castillo was not injured by the same course of conduct as the putative class because Castillo was

11   not denied employment on account of Defendants' allegedly discriminatory hiring practices.

12           Third, Handloser applied to sales positions at HCL, which regularly require that the

13   candidate interview with HR.  ECF No. 177-6, at ¶ 5 (Ex. B).  Most of the putative class, however,

14   will have applied for delivery positions, which make up the bulk of HCL's workforce.  ECF No.

15   177-5, at ¶ 8 (Ex. A).  Although Plaintiffs have presented evidence that HR conducts "culture fit

16   interviews" with sales candidates, Plaintiffs have failed to present evidence that candidates for

17   delivery positions are subjected to "culture fit interviews" or interviewed by HR.  Thus,

18   Handloser's experience in applying to HCL will have been atypical of the putative class as a

19   whole.  "[I]f the plaintiffs cannot establish that they were injured by the same conduct that injured

20   other class members, then their claims cannot be typical of other members of the class."  *Jones*, 34

21   F. Supp. 3d at 911; *Ellis*, 657 F.3d at 984 (same).

22           In sum, Plaintiffs have not established that "other class members have been injured by the

23   same course of conduct" as Named Plaintiffs.  *Ellis*, 657 F.3d at 984.  Plaintiffs have therefore

24   failed to establish typicality under Rule 23(a)(3).  Accordingly, because Plaintiffs have failed to

25   satisfy the requirements of Rule 23(a)(2) and Rule 23(a)(3), the Court denies Plaintiffs' request to

26   certify a class under Rule 23(b)(3) or 23(b)(2).

27           **D.  Plaintiffs have Failed to Establish Predominance**

28

Case No. 19-CV-01242-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

Even if Plaintiffs could establish commonality and typicality under Rule 23(a), Plaintiffs have failed to establish predominance under Rule 23(b)(3).  Rule 23(b)(3) requires plaintiffs to establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3)'s predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  Moreover, the predominance inquiry is "far more demanding" than Rule 23(a)(2)'s commonality requirement.  *Id.* at 624.  The Ninth Circuit has explained that "there is clear justification for handling the dispute on a representative rather than an individual basis" where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998); *Walker v. Life Insurance Co. of the Southwest*, 953 F.3d 624, 630 (9th Cir. 2020) (same).  Although Plaintiffs argue that common questions predominate in this case over individual questions, Plaintiffs have failed to establish predominance under Rule (b)(3) for four reasons.

First, over 1,000 job requests during the proposed class period explicitly excluded visa holders from consideration.  Opp. at 13; Mot. at 5; ECF No. 177-36, at 2–134 (Ex. AA).  Members of the putative class who applied for these positions therefore could not have been harmed by Defendants' alleged policy of favoring visa-ready Indian candidates over local candidates.  Plaintiffs have made no effort to exclude candidates in this position from the putative class, and therefore the class is overbroad and "includes individuals who could not have been injured by Defendant[s'] alleged wrongful conduct as a matter of law."  *Moore v. Apple, Inc.*, 309 F.R.D. 532, 543 (N.D. Cal. 2015) (citing *Mazza*, 666 F.3d at 594).  Determining Defendants' liability will therefore require an individual inquiry into whether the position that a putative class member applied for was restricted to United States citizens or green card holders.  Named Plaintiffs both exemplify this issue.  Handloser and Castillo both applied for positions at HCL that excluded visa holders from consideration, and therefore could not have been harmed by Defendants' alleged

18

United States District Court
Northern District of California

policy of favoring Indian visa-holders.  ECF No. 177-27, at ¶ 2 (Ex. R); ECF No. 177-23, at ¶ 2 (Ex. O).  The need for individual inquiries of this kind will predominate over common questions of law or fact to the putative class.

Second, for as many as two-thirds of job requests during the proposed class period, HCL's client interviewed the job candidate and provided feedback to HCL.  *See* Opp. at 23; ECF No. 177-29, at ¶ 23 (Ex. T); ECF No. 177-6, at ¶ 5 (Ex. B).  Many putative class members will therefore have been evaluated by an HCL client as part of the hiring process and the candidate's adverse employment decision may be attributable to a client's feedback.  Moreover, in some instances HCL's client was empowered to reject any candidate that the client did not find suitable after an interview.  ECF No. 177-27, at ¶ 2 (Ex. R) (explaining that a client, not HCL, would make the final decision whether to hire candidates).  The adverse employment decision for these class members is directly attributable to a client's evaluation or hiring decision, rather than Defendants' allegedly discriminatory hiring practices.  Named Plaintiff Castillo is an example of this lack of predominance.  Castillo was interviewed by HCL's client UCSF, and UCSF rejected Castillo after the interview.  *Id.* at ¶ 5 (Ex. R).  Thus, for Castillo and other putative class members, an individual inquiry into the client interview and evaluation process will predominate over questions of law or fact common to the class as a whole.  *See Buchanan*, 2017 WL 6611653, *20 (plaintiffs' failure to address the fact that defendant's clients are involved in the hiring process undermines predominance of common questions for the putative employment class).

Third, for approximately 50% of job requests during the proposed class period, HCL did not fill an open position with any candidate because either (1) the client withdrew the job request; (2) the client filled the job request with its own direct applicant; or (3) the position was filled by an HCL competitor.  Opp. at 20; ECF No. 177-29, at 10 n. 21 (Ex. T).  Many members of the putative class will have applied to a position that HCL was unable to fill, and therefore the candidate's adverse employment decision will not be traceable to Defendants' alleged discriminatory employment practices.  Castillo is an example of this lack of predominance because UCSF could not find a suitable candidate from HCL and thus withdrew one of the job requests for which

19

United States District Court
Northern District of California

Castillo applied.  ECF No. 177-27, at ¶ 6 (Ex. R).  An individual inquiry will therefore be necessary to determine whether a putative class member was not hired because either the client withdrew the job request; the client filled the job request with a direct applicant to the client; or an HCL competitor filled the job request.  These individual inquiries will predominate over common questions of law or fact to the putative class.

Fourth, although Plaintiffs' evidence suggests that "culture fit" interviews may have been conducted by HR for sales positions, Plaintiffs have not presented evidence that candidates for delivery positions were given culture fit interviews or interviewed by HR.  Delivery positions make up the majority of HCL's workforce, and therefore the majority of putative class members will have applied for delivery positions with HCL.  ECF No. 177-5, at ¶ 8 (Ex. A).  Plaintiffs argue that this is only a "superficial difference[]" between members of the putative class.  Reply at 11.  However, it is far from a superficial difference given that one of Plaintiffs' two theories of liability is Defendants' alleged practice of conducting "culture fit" interviews of job candidates.  It will therefore be necessary to individually determine which job candidates were subject to a "culture fit" interview and whether those candidates were rejected on the basis of that interview.  These individual inquiries will predominate over common questions of law or fact to the putative class.

As such, even if Plaintiffs had established commonality and typicality under Rule 23(a), Plaintiffs have failed to establish predominance.  The Court must therefore deny Plaintiffs' motion to certify a class under Rule 23(b)(3).

### E.  Plaintiffs have Failed to Satisfy the Requirements of Rule 23(c)(4)

Plaintiffs next argue that if the Court does not certify a class action under Rule 23(b)(3), the Court should certify a class under Federal Rule of Civil Procedure 23(c)(4).  Mot. at 22.  Rule 23(c)(4) provides that, "when appropriate, an action may be brought or maintained as a class action with respect to particular issues."  Fed. R. Civ. P. 23(c)(4).  As such, "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23[(c)(4)] authorizes the district court in appropriate cases to isolate the

20

common issues . . . and proceed with class treatment of these particular issues." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). However, "a Rule 23(c)(4) issues class must still meet the requirements of Rule 23(a) and (b) (except for the predominance requirement of Rule 23(b)(3))." *Tasion Communications, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 633 (N.D. Cal. 2015). Plaintiffs have not met the commonality and typicality requirements of Rule 23(a)(2) and 23(a)(3), and therefore certification under Rule 23(c)(4) is inappropriate.

Moreover, Plaintiffs devote only a single paragraph to their justification for certification under Rule 23(c)(4), and their only substantive argument in favor of certification is that "the case may be certified for a determination of common questions, including whether HCL engaged in a pattern and practice of discrimination in hiring and staffing, whether HCL's practices result in a disparate impact on the class, whether punitive damages are appropriate, and whether injunctive relief is appropriate." Mot. at 22. This perfunctory argument is insufficient for certification, and is "vague as to whether [Plaintiffs] intend[] to later certify a damages class, allow class members to individually pursue damages, or ha[ve] some other undisclosed plan for resolving this case." *Rahman v. Mott's LLP*, 2014 WL 6815779, at *9 (N.D. Cal. Dec. 3, 2014), aff'd 693 Fed. Appx. 578 (9th Cir. 2017). As such, Plaintiffs' perfunctory justification for certification itself requires the Court to deny certification of a Rule 23(c)(4) class.

Accordingly, the Court denies Plaintiffs' motion to certify a common issues class under Rule 23(c)(4).

**F. Class Counsel**

Finally, Plaintiffs request that Plaintiffs' counsel, Kotchen & Low LLP, be appointed class counsel. However, Plaintiffs' request to appoint Kotchen & Low LLP as class counsel is moot because the Court denies Plaintiffs' motion to certify a class.

## IV.    CONCLUSION

In sum, the Court finds that Plaintiffs have failed to satisfy the requirements of Rules 23(a)(2), 23(a)(3), and 23(b)(3) with respect to their putative class, and that Plaintiffs have likewise failed to satisfy the requirements of Rule 23(c)(4). Accordingly, the Court DENIES

United States District Court
Northern District of California

21

1   Plaintiffs' motion for class certification.

2   **IT IS SO ORDERED.**

3

4   Dated: March 9, 2021

5                                                    _Lucy H. Koh_
                                                     _____
6                                                    LUCY H. KOH
                                                     United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

Case No. 19-CV-01242-LHK
ORDER DENYING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION